WILSON W. GORE ET AL. v. SAMUEL C. DOOLITTLE ET AL.

1. STOCK LAW. *Part of county.* Code 1892, § 2056. *Laws* 1894, *p* 48; *Laws* 1897, *p.* 21.

   Code 1892, § 2056, as amended (Laws 1894, p. 48, and Laws 1897, p. 21), providing for the enforcement of a stock law in part of a county, does not authorize a stock law district, without natural boundaries, to be laid out with great irregularity and so as to exclude persons who oppose and include those who favor the law.

2. SAME.

   Unless marked by natural boundaries, a stock law district, being less than a county, should be formed of entire sections of land and should compose a compact body embracing at least thirty-six square miles.

FROM the circuit court of Webster county.

HON. WILLIAM F. STEVENS, Judge.

Doolittle and others, the appellees, began this controversy by a petition to the board of supervisors asking that proceedings be had by the board to establish a part of the county into a stock law district, under code 1892, § 2056, as amended by Laws 1894, p. 48, and Laws 1897, p. 21.

The section of the code, as so amended, so far as relates to the subject-matter of the suit, is quoted in the opinion of the court.

Gore and others, appellants, appeared before the board of supervisors and opposed the petition. The controversy was heard upon an agreed state of facts, it being admitted, among other things, that the proposed stock law district was shaped and included the lands as shown by the plat, and that it was so laid off and shaped purposely to leave out of said district those persons who oppose the stock law.

The stock law district sought by the petition was shaped, and embraced the lands, as shown in the following map or diagram:

PROPOSED STOCK LAW DISTRICT.

The board of supervisors denied the prayer of the petition, placing the denial on the ground that "the shape of the proposed stock law district . . . was not such as is contemplated by law." From this decision Doolittle and others, petitioners, now appellees, appealed to the circuit court.

The case was heard in the circuit court on the agreed state of facts, and that court reversed the judgment of the board of supervisors. From the circuit court judgment Gore and others, appellants, appealed to the supreme court.

*Sam Cooke,* for appellants.

The shape of the district as shown of record condemns it. It violates all reason, justice and common sense. It is grotesquely irregular, and it is an admitted fact that it was made so for the purpose of excluding those persons who oppose the stock law, and of including those who favor it. This admission condemns the scheme of Doolittle and others, the petitioners. If the scheme succeeds, the very purpose of the law will be violated,

and the majority placed at the mercy of the minority. By "cutting out" those opposed to the law, a so-called majority was of course obtained, but it was not a majority within the contemplation of the statute. Think of the position of a person thus cut out, and whose farm is nearly surrounded by the proposed stock law district. If he allows his cattle to wander at large, and they go over into the proposed district, they can there be taken up and impounded. Without being in the district literally, therefore, the person whose farm is so located, nevertheless has to keep up his stock as if he were in the district. The number of persons "cut out" is unknown of course, but that is the point to the scheme. The circuit judge "stuck in the bark," and failed to take the common sense and practical view of the matter which the supervisors took. The appellants are confident that this court will not be caught in the "snare," but will, like the supervisors, throttle the wrong.

*William P. Pope*, for appellees.

Under the statute only two things have to exist in order to entitle petitioners to have the stock law district established. (1) Two-thirds of the people having a right to be heard must join in the petition, and (2) the district must embrace an area equal to thirty-six square miles. Both of these prerequisites exist in this case.

The statute leaves nothing, the two prerequisites existing, to the discretion of the board of supervisors; it says nothing about the shape of the district. Of course if the legislature had intended to authorize the rejection of a petition on account of irregular shape, there would be found some warrant for such a conception in the statute itself. It was plainly the intent of the lawmakers to leave the shape of the district to the petitioners.

TERRAL, J., delivered the opinion of the court.

By an act of May 10, 1897 (Laws 1897, p. 21), the legisla-

ture amended code, § 2056, to read as follows: "2056. On petition, or if the board shall so direct, on the affirmative vote of two-thirds of the resident freeholders and lease-holders for a term of three years or more, of the county, or of any one or more of the townships, or of any part or parts of a county which are separated by natural boundaries (or any parts of two or more townships, not less than thirty-six square miles), the board of supervisors shall, by order duly entered on its minutes, declare the stock law to be in force in the whole county, or in such township or townships, part or parts, of the county."

The appellees, S. C. Doolittle and others, petitioned the board of supervisors of Webster county to declare the stock law in force in certain sections and parts of sections of land described in their petition. The land sought to be established as a stock law district lies in ranges eight and nine of township twenty-one of said Webster county, and is very irregular in shape. This proposed district is composed of thirteen whole sections of land lying in the western part of range eight, and of fourteen whole sections lying in range nine and the eastern portion of range eight; to these entire sections of land is added other parts of other sections, so as altogether to make something more than thirty-six sections of land in quantity. The greatest length of this strip of land from east to west is ten miles, and near the center its width from north to south is less than one mile; in effect it is two stock law districts—an eastern one of fourteen square miles with some fragmentary parts of other sections, and a western district of thirteen square miles with some fragmentary parts of other sections, comprising together twenty-seven square miles, and containing, with parts of other sections, something over thirty-six sections of land in quantity. The shape of this proposed district cannot be well conceived without drawing it off upon a map, and so mapped and looked at, it is absurd to conceive of it as a stock law district.

It was agreed that the petition was signed by a two-thirds majority of resident freeholders and leaseholders for a term

of three years or more; and among other things it was also agreed that "the shape of the district is caused by 'cutting in and out' so as to leave out of said district those who were opposed to the stock law." And we see that section ten of range eight is the only part of the land that connects the eastern fourteen square miles with the western thirteen square miles, and yet three acres is taken out of the northwest corner of said section because a resident there was opposed to the stock law.

It is argued that this district comes within the letter of the statute, and is therefore a valid exercise of local authority. We do not think so. The statute requires a district to contain thirty-six square miles, not land sufficient to make thirty-six square miles of territory, and here we have in this district only twenty-seven square miles, divided into two irregular bodies, and connected by one section of land only. It is true that these two bodies of land are, by reason of section ten, contiguous, and the express letter of the statute does not require contiguity of parts; yet to form a district of separate, disconnected sections would be absurd. It the district be set off by natural boundaries, the form of it perhaps would be immaterial, but unless marked by natural boundaries, we think it should be formed of entire sections of land, and should compose a compact body of land making at least thirty-six square miles.

The method of forming this district, according to the agreed statement of facts, condemns it; but if formed with the utmost good faith, it could not be permitted to stand.

*We coincide with the views of the board of supervisors of Webster county that this district is condemned by its shape, and the judgment of the circuit court is reversed and annulled, and the case is remanded for further proceedings.*