WILLARD E. SHAW ET AL. *v.* JESSE E. WOFFARD ET AL.

STOCK LAW DISTRICT. *Laws* 1900, *p.* 164, *ch.* 124. *Board of supervisors Enlarging districts.*

Under laws 1900, ch. 124 (Laws, p. 164), empowering them so to do, the board of supervisors may create a stock law district less in area than a township, if the territory thereof be adjoining and contiguous to a pre-existing district in the same or an adjoining county.

FROM the circuit court of Webster county.

HON. WILLIAM F. STEVENS, Judge.

Woffard and others, appellees, petitioned the board of supervisors to add territory, less than a township, to a pre-existing stock law district; Shaw and others, appellants, opposed.

An appeal was had from the board of supervisors of the county to the circuit court, where a judgment was rendered granting the prayer of the petition, from which judgment Shaw and others, opposing the petition, appealed to the supreme court. The facts are stated in the opinion of the court.

*Samuel Cook,* for appellants.

This proposed district is condemned by its shape, and, if formed thus, it would not be permitted to stand. *Gore* v. *Doolittle,* 77 Miss., 620. The west boundary line, splitting sections into two parts, and the east boundary, running zigzag through the neighborhood, strongly indicates "Something rotten in Denmark."

By a correct diagram, according to description in petition, it will be seen that the west boundary line is diagonal and the north boundary line is in Chickasaw county by forty rods, or one-eighth of a mile.

All the power of the board of supervisors, legislative, judicial, and ministerial, is limited to their own county. Code of 1892, §§ 272, 289; acts of 1896, ch. 132, p. 145; constitution of 1890, sec. 170.

*Roane & Lamb* and *Dunn & Gould,* for appellees.

The case of *Gore* v. *Doolittle,* 77 Miss., and *Garner* v. *Webster County,* 79 Miss., do not apply in this case, for the reason that these petitioners only desire to add to the stock law district already created by the legislature of 1890; they do not desire to make a new stock law district. See acts 1900, ch. 124.

It is not necessary under the law of 1900 that the land sought to be added to a valid stock law district already made should lie in any particular shape, or be composed of any certain number of acres, the only requisite being that it shall be done in part of a county and adjacent to the stock law district already created, to which petitioners desire to attach their land, and also that it be done upon "like proceedings"—that is, by petition from two-thirds of the "resident freeholders and leaseholders for a term of three or more years" of the land sought to be added.

PRICE, J., delivered the opinion of the court.

On the first Monday of February, 1902, the appellees pre-

sented their petition to the board of supervisors of Webster county, praying that certain lands in said county, described as follows: "Beginning at a line between Chickasaw and Webster counties, at the northwest corner of the northeast quarter of sec. 34, twp. 15, range 1 east, and running south to the southwest corner of sec. 5, twp. 21, range 11 east, in Webster county; thence east four miles to the southeast corner of the southeast quarter sec. 2, twp. 21, range 11 east; thence north one mile to the northeast corner of the northeast quarter of sec. 2, twp. 21, range 11 east; thence west along the section line between said section 2 and fractional sec. 5, twp. 16, range 2, to the southwest corner of said fractional section 5; thence north along the section line between fractional secs. 5, 6, twp. 16, range 2 east, to the south boundary line of sec. 32, twp. 15, range 2 east; thence west to the southeast corner of sec. 31, twp. 15, range 2 east; thence north along section line to Chickasaw county line; thence west along the section line to point of beginning, and adjoining and contiguous to the said county of Chickasaw and the stock law district as established by the acts of the legislature of 1890, p. 170"—be established as a stock law district. The petition and proof show that more than two-thirds of the resident freeholders and leaseholders, for a term of more than three years, signed the petition; that the territory described in the petition was adjoining and contiguous to that part of Chickasaw county then under the stock law. It is also alleged that the proposed territory, excepting the following land (the west half and the east half of the northeast quarter sec. 2, twp. 21, range 11 east), has heretofore been treated as being under full stock law, but, "owing to a defective order of the board of supervisors, or otherwise," the said territory was thrown out of the stock law district, and that the farmers in the proposed territory have no fences, except for pastures, and a portion of their oat crop has already been planted. W. E. Shaw and others appeared at the February, 1902, meeting of the board, and filed an an-

swer opposing this petition, and introduced, over petitioners' objections, and along with other evidence, the following preamble and resolution: "Whereas, the people of Webster county are being constantly harrassed by the question of stock law, wherefore, by the people, in mass meeting assembled, Resolved, that from and after the 3d day of February, 1902, all petitions asking for a stock law are illegal, and that a bill of exceptions is taken, if granted, to test the legality thereof." This mass meeting also appointed a committee of fifteen men (three from each supervisor's district) in Webster county.

The substantial averments of the petition were proven. The board of supervisors, after hearing the petition, on February 6, 1902, granted the petition, and put the stock law in force at once as to all territory embraced in the petition, with the exception of the west half and the east half of the northeast quarter sec. 2, twp. 21, range 11 east; and, as to this excepted tract the petition was granted, to take effect at the expiration of four months. The citizens' committee filed their bill of exceptions, and the case was appealed to the circuit court, and there the learned judge affirmed the findings of the board of supervisors, and from such judgment Shaw and others appeal to this court.

There are two propositions presented by this appeal: First, it is contended that the shape of the district is not according to law; second, that the board of supervisors of Webster county undertook to exercise jurisdiction over a portion of the lands lying in Chickasaw county; and appellees rely upon *Gore* v. *Doolittle,* 77 Miss., 620; 27 South., 997, and *Garner* v. *Webster County,* 79 Miss., 565; 31 South., 210. In *Gore* v. *Doolittle,* this court held that sec. 2056 of the code of 1892, as amended (laws 1894, p. 48, ch. 58; laws 1897, p. 21, ch. 17), provided that the enforcement of a stock law in a part of a county does not authorize a stock law district, without natural boundaries, to be laid out with great irregularity, and so as to include those persons who favor the

law and exclude those persons who oppose it, and, unless such proposed district be marked by natural boundaries, it should be formed of entire sections of land, and should comprise a compact body, embracing at least thirty-six square miles. In *Garner* v. *Webtser County,* this court held "that where the record of the proceedings of the board of supervisors, undertaking to establish a stock law district in a part of a county, shows that the proposed district was shaped contrary to the statute, the proceeding is absolutely void and subject to collateral attack." But it will be borne in mind that these decisions were had under section 2056 of the code of 1892, as amended by the acts of the legislature of 1894 and 1897. So the act of the legislature of 1900, p. 164, ch. 124, was passed to meet the conditions made necessary by the decisions of this court in the cases cited. This condition of affairs worked a hardship on those people living adjoining and contiguous to districts formed according to law, both where the district lay within the county and within an adjoining county where the stock law was in force. By the act of 1900, p. 164, ch. 124, the legislature made it possible for the people so situated to be annexed to a stock law district already formed, whether such district was in that or an adjoining county. By the language of the statute, it expressly applies to territory lying "within a county contiguous to an existing stock law district of another county." So that where a proposed stock law district is adjoining and contiguous to an existing stock law district in the same county, or where such proposed district is adjoining or contiguous to a stock law district of an adjoining county, the petitioners have the right, upon complying with the acts of 1900, to be declared a stock law district; and this is true regardless of whether the proposed district embraces a township, or a less quantity of land.

It is perfectly manifest that when parties petition for a stock law district in a county where no district now exists, and where not contiguous to a stock law district in another county, such application should contain a township, or sufficient land,

in the aggregate, to amount to thirty-six square miles, whether taken from two or more townships, or such territory as is separated by natural boundaries. The language of the statute is: "Any part of a county, whether less than a township or not, may [interpreted 'shall'] be added to any stock law district heretofore or hereafter established, whether in the same or adjoining county. But the order declaring a stock law shall not take effect, nor be put in force, for four months after it has been entered on the minutes of the board; provided, that territory which has heretofore been treated as being in the stock law, but which, on account of a defective order of the board, or otherwise, was not legally embraced in such stock law territory, shall be allowed to come into the stock law immediately after the order has been entered." And the conclusions reached make a consideration of the second proposition advanced unnecessary.

*Affirmed.*