LAMMONS ET AL. *v.* BOARD OF SUPERVISORS OF YAZOO COUNTY.

[68 South. 168.]

ANIMALS. *Stock districts. Cities.*

The fact that a city has a charter, which empowers its council to prevent animals from running at large in the streets, does not make it a separate stock law district, so that its residents are not qualified to vote on the organization of a district, including other lands, since the intention of the legislature, in enacting the stock law, was to enable farmers to grow crops without fencing them, and if the city should permit animals to run at large therein they would stray on the adjoining farms and render the stock law ineffective.

APPEAL from the circuit-court of Yazoo county.
HON. W. A. HENRY, Judge.

Proceedings by M. K. Lammons and others against the board of supervisors of Yazoo county. From a judgment of the circuit court approving an order of the board which declared the stock law in force in a certain district, Lammons and others appeal.

The facts are fully stated in the opinion of the court.

*E. L. Brown,* for appellants.

The self-satisfying assertion, in the opening of the brief for appellees, that the case of *Shaw* v. *Woffard,* 82 Miss. 143, settles this case in favor of appellees, is as far from the true legal effect of that case as the East is from the West. In fact, that case has no more bearing upon this one than if the same had not had reference to the stock law.

The cases of *Gore* v. *Doolittle* and *Garner* v. *Webster County* were there referred to simply to show that they held that stock-law districts could not be created, if not "separated by natural boundaries," except by the

incorporation of territory "formed of entire sections, comprising a compact body, and embracing at least thirty-six square miles," and that, unless so formed, the order creating the district was subject to collateral attack. The statute, as it existed when those two cases were decided, read as it did when the Shaw case was decided, and now, the provision for adding territory permits irregular shape, and less than thirty-six square miles, although not "separated by natural boundaries." The Shaw case dealt with the matter of adding territory to a stock-law district in another county, and it was very properly held that the added territory need not be separated by natural boundaries, and need not be of entire sections, and need not be of at least thirty-six square miles; but it adds: "It is perfectly manifest that, when parties petition for a stock-law district in a county, where no district now exists, and where not contiguous to such district in another county, such application should contain a township, or sufficient land, in the aggregate, to amount to thirty-six square miles, or such territory as is surrounded by natural boundaries;" which is just exactly what the Gore and Garner cases held.

In other words, if beat 3, in this case, is territory added to a stock-law district, and the order added it to such district, we cannot complain. This is what the Shaw case holds—nothing more, nothing less.

But beat 3 is not "added to," or "surrounded by," any such district, because neither beat 2 nor beat 4 was legally created as such, each one of them having been attempted to be created on a petition simply called for an election, and not for a stock law, and each being of such shape that it could not, under the law, be constituted a stock-law district. Each order, the one attempting to create beat 4, and the one attempting to create beat 2, a district, was subject to collateral attack, both because the order, on its face, showed the illegal shape

and that the petition was for an election, and not for a stock law. In this proceeding, we attack those orders collaterally, simply in order to show that beat 3 is not added to, or surrounded by, a district, in this county or in any other county, and that, therefore, the law applied in the Shaw case has no application here. This is perfectly manifest.

To say, as do counsel, that the order in this case added territory to a district, and whether it so recited is immaterial, begs the whole case. Beats 2 and 4, so far as shape is concerned, are under as void orders as can be imagined, they might as well say that beat 3 is of legal shape, and end the matter right there.

Second, the citation and consideration of the town of Amory totally ignores the fact that Yazoo City is under the special charter, Amory was under the general law, and that case was reasoned upon a construction of the municipal chapter in the light of the chapter on "Fences and Stock." It ignores, and does not combat, the proposition that general laws do not repeal special or local ones, except by express provision, under the mandate of section 8 of the Code, and, under general principles, except by necessary implications, as pointed out in our brief in chief.

A far-fetched construction, citing the circuit court in some unnamed case, is placed upon the city charter: "The council shall have power to prevent cattle, sheep, horses, hogs, dogs, and other animals from running at large upon the streets," etc., means that the pound master must stand around, watch such animals at large on vacant, unenclosed lots, and take them up, "if they get on the streets." In other words, the council may take them off of the streets," according to our friends for the appellees. A drowning man will catch at straws, we are reminded.

It is an effort at astuteness, on the part of our friends for the appellee, to not see the application of the Boon-

ville case, holding that the municipal chapter is qualified by the revenue chapter, Boonville being chartered under a general law, and the Corinth case, holding that the special charter of that town is not qualified by that same revenue law.

Our friends are also silent on the necessity of having repealed, altered, or modified, the charter of Yazoo City, under section 2243, before having swallowed it up in beat 3 of the county.

*Barbour & Henry* and *Campbell & Campbell,* for appellee.

The case of *Shaw* v. *Woffard,* in 82 Miss. 143, settles in favor of the appellees the first proposition advanced in the brief of appellants, that beat 3 of Yazoo county is not of such shape that it may be created a stock-law district, nor is it added to territory surrounding or partially surrounding it in which a stock law is already in force. We quote from the opinion in *Shaw* v. *Woffard,* as follows: ''There are two propositions presented by this appeal:

First, it is contended that the shape of the district is not according to law; second, that the board of supervisors of Webster county undertook to exercise jurisdiction over a portion of the lands lying in Chickasaw county; and appellees rely upon *Gore* v. *Doolittle,* 77 Miss. 620, 27 So. 997, and *Garner* v. *Webster County,* 79 Miss. 565, 31 So. 210. In *Gore* v. *Doolittle,* this court held that section 2056 of the Code of 1892, as amended (Laws 1894, p. 48, ch. 58; Laws 1897, p. 21, ch. 17), provided that the enforcement of a stock law in a part of a county does not authorize a stock-law district, without natural boundaries, to be laid out with great irregularity, and so as to include those persons who favor the law and exclude those persons who oppose it, and, unless such proposed district be marked by natural boundaries, it should be formed of entire sections of land, and should comprise a compact body,

embracing at least thirty-six square miles. In *Garner* v. *Webster County,* this court held "that where the record of the proceedings of the board of supervisors, under-taking to establish a stock-law district in a part of a county, shows that the proposed district was shaped contrary to the statute, the proceedings is absolutely void and subject to colateral attack. But it will be borne in mind that these decisions were had under section 2056 of the Code of 1892, as amended by the acts of the legislature of 1894 and 1897. So the act of the legislature of 1900, page 164, chapter 124, was passed to meet the conditions made necessary by the decisions of this court in the cases cited.

It is perfectly manifest that when parties petition for a stock-law district in a county where no district now exists, and where not contiguous to a stock-law district in another county, such application should contain a township, or sufficient land, in the aggregate, to amount to thirty-six square miles, whether taken from two or more townships, or such territory as is separated by natural boundaries. It is contended in the brief of appellants that, according to decisions of this court, the district should be composed of entire sections, but we call attention to the opinion in the case of *Shaw* v. *Wof-fard,* wherein the description of the land is given, show-ing parts of sections, and not showing any natural boundaries. A map of Yazoo county is in evidence, and an inspection of beat 3 shows that it comprises a terri-tory much over thirty-six square miles, and parts of more than two townships. It is certainly a compact body of land, with boundaries more clearly defined than could possibly be the boundaries of a township. Under the above decision, it comes clearly within the law.

The only other proposition advanced by the brief is that seventy-eight votes at the Yazoo City box were il-legally cast in favor of the stock law, which, if elimi-nated, would reverse the result. We believe that the

case before the court is controlled absolutely by the case of *Stockton* v. *Caldwell,* 86 Miss. 477, which holds as follows:

"The fact that all municipal authorities are vested with power to 'prevent or regulate the running at large of animals of all kinds' within the corporate limits of their respective municipalities does not deprive the freeholders and leaseholders residing in such municipalities of their right to petition either for or against the establishment by the board of supervisors of a stock law which embraces the municipality within the territory covered by such law." "A consideration of Codes 1892, 2056, 2060, 2063, in connection one with the other, makes it manifest that it was not the legislative design to except the territory lying within a municipality from the operation of a lawfully established stock law by which it is completely surrounded and covered. The leaseholders and freeholders resident in the town of Amory, not having signed the petition, must, by operation of law, be counted against it, and, this being done, it is conceded that the petition lacked the requisite majority."

We ask the court's careful attention to the reading of section 9 of the charter of Yazoo City, by the terms of which it is contended on behalf of the contestants that, inasmuch as the city of Yazoo City has the sole power delegated by the legislature to regulate the matter of animals running at large, that the board of supervisors could not, by declaring a stock-law election to have resulted either for or against the stock law, affect the existing state of matters within the corporate limits. The said section 9 reads as follows: "That said council shall have power by ordinance: Ninth. To prevent cattle, horses, hogs, dogs, and other animals from running at large in the streets, by impounding the same, or the use of such other means as they may see proper to adopt, regulate the driving of hogs, cattle and other

animals through the streets, and the speed of riding and driving vehicles through the same, and to establish and regulate public pounds.''

We also ask the court's attention to section 3370 of the Code of 1906, which gives the right to the board of mayor and aldermen of the cities operating under the Code chapter, as follows: ''To prevent or regulate the running at large of animals of all kinds, and to cause such as may be running at large to be impounded and sold to discharge the costs and penalties provided for the violation of such regulations'' etc. The wording of the said section 3370 and that of the said section 9 of the Yazoo City charter are almost identical, except that the code section is stronger and gives wider powers. The town of Amory, which was operating under the code section, was held to be against the stock law, by reason of the fact that they were not allowed to participate in the petition. We fail to draw any distinction between the powers delegated by charter, and those delegated by the code, except that the powers under the code are greater. The power granted to Yazoo City by the charter is a restricted power, and they are not given full control or the full right to regulate the running at large of animals within the corporate limits of Yazoo City, but only on the streets of Yazoo City. The streets of course constitute a very small percentage of the property within the corporate limits. A question came up in the circuit court of Yazoo county, in a replevin suit for a mule which the pound master had taken up on a vacant lot within the corporate limits of Yazoo City, and it was held that, inasmuch as the charter gave the right to regulate the running of stock only on the streets, that he had no right to take up the mule on private property within the corporate limits. Therefore, the freeholders of Yazoo City are not given the protection by the charter which the law contemplates.

Cook, J., delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Yazoo county, approving an order of the board of supervisors declaring the stock law in force in beat 3 of the county.

Appellants complain because they say beat 3 of the county does not constitute, as required by chapter 219, Laws 1912, ''any part of two or more townships, not less than thirty-six square miles,'' and, secondly, because seventy-eight voters residing in Yazoo City, and owning no real estate outside said city, were allowed to vote in the election, and, eliminating these voters, the order was not approved by the voters. According to our count, the proposed district contained not less than thirty-six full sections of land and several parts of sections besides.

The cases of *Gore* v. *Doolittle,* 77 Miss. 620, 27 So. 997, and *Garner* v. *Webster County,* 79 Miss. 565, 31 So. 210, are relied on to reverse the judgment below. We do not think that either of these cases support the contention of appellants. The district does not fall within the condemnation of these cases.

The second point is based on the theory that Yazoo City is already under the stock law, and that therefore the seventy-eight voters residing in the city were disqualified to vote. The argument on this point is interesting, but it seems to us that it is unsound, because it is based upon a false premise. Yazoo City is not working under the general law governing municipalities, but it is working under a special charter granted in 1884. It is contended that the legislature granted to the city exclusive authority over this question of stock running at large within the city, and in pursuance of that authority the municipal authorities have passed an ordinance, the effect of which is to make Yazoo City a separate stock law district. The power relied on to support this contention is in these words:

"That said council shall have power by ordinance: Ninth. To prevent cattle, horses, hogs, dogs, and other animals from running at large in the streets by impounding the same, or the use of such other means as they may see proper to adopt, regulate the driving of hogs, cattle and other animals through the streets, and the speed of riding and driving vehicles through the same, and to establish and regulate public pounds."

It will be observed that the power conferred is limited to the prevention of animals from "running at large in the streets," and, if the power is enlarged by ordinance, the ordinance would exceed the charter power. In truth, the so-called stock laws are, more properly speaking, no-fence laws—laws to permit the cultivation of unfenced crops, and all of the regulations are to make effectual this purpose. We can see no reason why Yazoo City voters should be excluded from participation in the election.

In attempting to interpret the intention of the legislature, it is important that we take into consideration the conditions the lawmakers are endeavoring to deal with. Our state is largely devoted to agriculture, and we have no cities in the usual acceptation of that term. Most "cities" in this state are mere hamlets; but, of course, this has no application to the thriving city in question. But an isolated exception will not control or aid in interpreting the will of the legislature. If Yazoo City was permitted to live alone, to permit cattle, pigs, and horses to stray at will, it would be hardly possible for the farming community adjacent to the city to throw down their fences. So far as Yazoo City pigs and cows are concerned, they could roam at will and grow fat at the expense of the tillers of the soil. The paramount thought of the legislature was to protect crops, and to relieve the owners of some of the necessity of building a five hundred dollar fence to fence out a five dollar beast, and even the town cow must give up some of her traditional rights for the general good.

*Affirmed.*